IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| CHARLENE H. HALLMAN, as next friend of H.H., a minor,[1] JESI HALLMAN, AMANDA E. WALTERS, and ROBERT W. HALLMAN,<br><br>    Plaintiffs,<br><br>v.<br><br>LINDA C. HALLMAN and PRINCIPAL LIFE INSURANCE COMPANY,[2]<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  CIVIL ACTION NO. 5:12-CV-4 (MTT)<br>)<br>)<br>)<br>)<br>)<br>) |

## ORDER

The Plaintiffs filed this lawsuit in the Superior Court of Houston County in November 2011 asserting their entitlement to life insurance benefits payable by reason of Robert F. Hallman, Jr.'s death. (Doc. 1-1). The dispute arose over funds provided by the decedent's two insurance plans issued by Principal Life under Policy No. 1005562: the Group Voluntary Term Life Insurance Plan ("GVTL Plan")[3] and the Group Member Life Insurance Plan ("GMLI Plan"). The crux of the matter is this: a divorce decree between Robert Hallman and his previous wife, Plaintiff Charlene Hallman, purportedly obligated Robert Hallman to list his four children as beneficiaries of his life insurance policies. However, sometime after Robert Hallman was remarried to Defendant Linda

---

[1] The Plaintiff "H.H." is no longer a minor.

[2] Principal Life has been dismissed from this action. (Doc. 18).

[3] The GVTL Plan funds were fully disposed of by a previous Order of this Court. (Doc. 18).

Hallman and before he died, the beneficiary under the GMLI plan was changed from his children to Linda Hallman.  Under the GMLI Plan, $94,000 was payable at Robert Hallman's death.

On January 4, 2012, Principal Life removed the action to this Court because the insurance plans are employee welfare benefits governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq*.  (Doc. 1).  Principal Life then asserted counter- and cross-claims in interpleader, pursuant to Fed. R. Civ. P. 22, against the four Plaintiffs and Linda C. Hallman, and deposited the contested life insurance benefits into the Court registry.[4]  The amount deposited totaled $154,012.72.  Of that, $50,000 represented then-unpaid portions of the GVTL benefits, $94,000 represented benefits payable under the GMLI Plan, and the remaining $10,012.72 represented applicable interest.  (Docs. 3-5, 7).

On November 21, 2012, the Court granted Principal Life's motion for discharge and dismissed it with prejudice as a party in this action.  (Doc. 18).  The Court further ordered that the $50,000 GVTL Plan benefits, plus $3,476.64 in interest, be distributed in equal portions to Plaintiffs Jesi Hallman and H.H.  (Doc. 18).  During a status conference shortly thereafter, the Court asked the parties to brief the issue of whether the Court should continue to exercise jurisdiction over the case or whether the case should be remanded to state court given Principal Life's dismissal and the non-diversity

---

[4] Principal Life also moved to join Magnolia Cemetery and McCullough Funeral Home, Inc. as defendants in interpleader.  (Docs. 3, 4, 5).  In June 2011, Defendant Linda Hallman had assigned $6,000.00 of the benefits payable under the GMLI Plan to Magnolia Cemetery.  (Docs. 3, 3-7).  She had assigned $8,097.23 benefits payable under the GMLI Plan to McCullough Funeral Home.  (Doc. 3, 3-8).  Magnolia Cemetery and McCullough Funeral Home were served with the claims in interpleader on February 2, 2012, (docs. 10, 11) but neither party has filed an Answer or any other responsive pleadings.

of the remaining parties, whose dispute revolves heavily around a state court divorce decree. (Doc. 19).

After reading the parties' briefs (Docs. 20, 21) and further researching the matter, the Court concludes that, for now, it should retain jurisdiction pending further review of the divorce decree. This is an ERISA-related case, and ERISA contains a broad preemption requirement, such that it "supersede[s] any and all State laws insofar as they may …relate to any employee benefit plan," subject to certain exceptions. 29 U.S.C. § 1144(a). However, due to the nature of the claims and the potential involvement of a divorce decree, a few issues arise. One such issue is standing. Although ERISA has a broad preemptive effect when asserted defensively, a plaintiff's state court action asserting only state law claims does not arise under federal law for removal purposes unless it satisfies a four-part test for "complete" preemption:

> (1) 'there must be a relevant ERISA plan,' (2) 'the plaintiff must have standing to sue under that plan,' (3) 'the defendant must be an ERISA entity,' and (4) 'the complaint must seek compensatory relief akin to that available under § 1132(a); often this will be a claim for benefits due under a plan.'

*Connecticut State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1344 (11th Cir. 2009) (quoting *Butero v. Royal Maccabees Life Ins. Co.*, 174 F.3d 1207, 1212 (11th Cir. 1999)). As to the second part of this test, only a plan "participant" or "beneficiary" may sue to recover benefits under an ERISA plan. 29 U.S.C. § 1132(a)(1). There is no suggestion that the plaintiffs are plan participants, so to bring an ERISA claim, they would have to be plan beneficiaries. An ERISA beneficiary is "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8).

At the time the case was removed, the Plaintiffs were allegedly named beneficiaries under the GVTL Plan. Now that those funds have been disposed of, whether the Plaintiffs remain plan "beneficiaries" for ERISA standing purposes is unclear. ERISA requires plan administrators to discharge their duties "in accordance with the documents and instruments governing the plan," 29 U.S.C. § 1104(a)(1)(D), and it also contains an anti-alienation/anti-assignment provision that requires pension plans to provide that benefits may not be assigned or alienated. 29 U.S.C. § 1056(d)(1).[5] These statutes limit the effect of agreements outside the plan that purport to direct benefits to someone other than the listed beneficiary. *See, e.g.*, *Kennedy v. Plan Adm'r for Dupont Sav. and Inv. Plan*, 555 U.S. 285, 300 (2009) (holding that an ERISA claim "stands or falls by 'the terms of the plan'"); *Riordan v. Commonwealth Edison Co.*, 128 F.3d 549, 553 (7th Cir. 1997) (ERISA generally requires the plan fiduciary to pay benefits to the beneficiary properly designated under the plan's terms). As such, there is the potential that the only ERISA beneficiary left in this case is Linda Hallman, who allegedly is the designated beneficiary in the GMLI plan. If that is true, this Court may be without subject matter jurisdiction and remand to state court may be required. *See Alcorn v. Appleton*, 2009 WL 2997730 at *4 (N.D. Ga.) (plaintiffs were not designated beneficiaries under ERISA plan so they did not have standing to allow for proper removal).

At the same time, there is an exception to ERISA's preemption and anti-alienation provisions that allows for the consideration of "*qualified* domestic relations

---

[5] The anti-alienation/anti-assignment provision may apply only to pension benefits and not to life insurance benefits. However, it illustrates a federal question that may arise as this case goes forward.

orders" (QDRO).  29 U.S.C. § 1144(b)(7) (emphasis added).  A QDRO is specifically defined by statute at 29 U.S.C. § 1056(d)(3)(B)-(D).[6]  If the divorce decree at issue is a QDRO, a question of federal law, then the Plaintiffs may have been designated to receive benefits under the GMLI plan and so may be ERISA "beneficiaries."  See *Hursey v. Hursey*, 704 F. Supp. 2d 1288, 1293 (N.D. Ga. 2010) (plaintiff, as a result of a QDRO, was a plan beneficiary with standing to sue).  This would presumably cure any standing concerns.  The existence of a QDRO is also significant because, in addition to providing standing, it would likely lead to the application of state law rather than ERISA law to determine the proper recipient of the GMLI Plan funds.[7]  Of course, this might itself counsel remand to allow the state courts to address matters of state law.

Thus, of central importance is whether the divorce decree between Charlene and Robert Hallman is a "qualified domestic relations order."  Until this is decided, it is

---

[6] The divorce decree in this case does not appear on its face meet the QDRO statutory requirements.  However, it also appears courts do not apply the statute as strictly as it is written.  *See, e.g.*, *Metro. Life Ins. Co. v. Bigelow*, 283 F.3d 436, 443 (2d Cir. 2002) (QDRO requirements generally have not demanded literal compliance).  So this issue is arguable.  Moreover, "[t]he Eleventh Circuit has not interpreted the QDRO requirements."  *USAble Life v. Brown*, 2009 WL 798950 at *3 n.14 (M.D. Ala.).

[7] *See, e.g.*, *Metro Life Ins. Co. v. Williams*, 82 F. Supp. 2d 1346 (M.D. Fla. 1999).  The facts in *Williams* were similar to the ones here – an ex-wife and a "friend" of the decedent both claimed his life insurance benefits after he died.  82 F. Supp. 2d at 1348.  According to the divorce agreement between the decedent and the ex-wife, the ex-wife was to receive his life insurance benefits.  But before he died, the decedent named his "friend" as the policy beneficiary.  The insurance company filed a complaint in interpleader, paid the money into the court, and was then dismissed.  *Id.*  With only the ex-wife and friend left in the case, the court reviewed the law in other circuits to determine whether the state divorce decree was preempted by ERISA or whether it was a QDRO.  *Id.* at 1349-53.  After determining the decree was a QDRO, the court decided the merits of the competing claims under Florida law and found in favor of the ex-wife.  *Id.* at 1353.

unclear what role, if any, the divorce decree may play.  Accordingly, the Court will for now retain jurisdiction of this case to determine whether a QDRO exists.

The parties are **ORDERED** to, within **30 days**, file briefs addressing whether the divorce decree qualifies as a QDRO and how that determination affects the further disposition of this case.  The Court will then revisit the issue of subject matter jurisdiction and the potential for remand.

**SO ORDERED**, this 5th day of March, 2013.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT
